UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
DR. ELAINE M. ANCEKEWICZ,

                Plaintiff,

       - against -

LONG ISLAND UNIVERSITY,

                Defendants.
----------------------------------X

**MEMORANDUM & ORDER**
02-CV-4490 (DRH) (ARL)

**A P P E A R A N C E S :**

**DR. ELAINE M. ANCEKEWICZ**
Plaintiff Pro Se
32 Market Street
Port Jefferson Station, New York 11776

**CULLEN AND DYKMAN**
Attorneys for Defendant
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
By: Catherine Murphy, Esq., and Jennean R. Lee, Esq.

**HURLEY, District Judge:**

*INTRODUCTION*

Dr. Elaine M. Ancekewicz ("Ancekewicz"), the above-captioned Plaintiff, brought the present ERISA suit against Defendant Long Island University ("LIU"), her former employer. The complaint alleges that LIU terminated Ancekewicz's employment in retaliation for her inquiries regarding retirement benefits. LIU has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motion is granted, and this case is dismissed.

*BACKGROUND*

According to Ancekewicz's complaint, she was hired to work at LIU on or about September 21, 2001 as the "Director of Non-Credit and Special Programs" at LIU's C.W. Post campus in Nassau County. Ancekewicz was interviewed for the position by Dr. Nishan Najarian, who served as "University Dean of the School of Continuing Studies," and was apparently her supervisor. In an affidavit submitted in support of LIU's present motion, Najarian states Ancekewicz's appointment was for one academic year only, and that "[a]t no time did I inform plaintiff that she would be entitled to retirement benefits," and that "[t]he determination as to whether an employee is eligible to participate in LIU's retirement plan . . . is made solely by the Payroll Department." However, Ancekewicz alleges that she would not have accepted LIU's offer of employment were it not for a promise by Najarian "that she would be receiving full retirement benefits through TIAA-CREF, an employee benefit plan." And according to Ancekewicz, upon commencing employment she was "given a benefits packet which stated that participation in the TIAA-CREF retirement plan required 1 year of service but that prior years of service with an eligible employer could satisfy the 1 year requirement." Ancekewicz states that she had "many years of prior service with eligible employers," "provided her TIAA-CREF number" on the benefits forms as instructed, and "was told by LIU's benefits and personnel offices that payments would then be made to TIAA-CREF."

According to the complaint, in January 2002 Ancekewicz contacted Joan Liacono, the Director of payroll and personnel records in LIU's benefits office, as well as

2

Najarian, and advised them that LIU had failed to make any contributions to TIAA-CREF on her behalf thus far, in contravention of Najarian's promise and the information contained in her benefits packet. According to Ancekwicz, Najarian told her that he would speak about the matter to George Sutton, LIU's counsel, but when Ancekewicz herself "attempted on several occasions to meet with Sutton, [she] was referred back to Liacono."

Ancekewicz's complaint further alleges that when she met with Najarian on or about February 26, 2002 to discuss her benefits, "she was presented with a warning letter." She was then informed in the following month by Elaine Crosson, LIU's associate counsel, that she was not entitled to retirement benefits. In April 2002 Ancekewicz spoke with Mary Lai, LIU's treasurer, regarding her benefits. Hearing nothing further, on May 15, 2002 Ancekewicz sent Najarian an e-mail that stated in relevant part: "What is the status of my retirement benefits? Do I need to hire an attorney? I am really not willing to wait any longer." Approximately eight days later, says Ancewicz, she "received a check for the amount she would have received had she been in the TIAA-CREF retirement plan." On June 17, 2002, Najarian and LIU's Provost met with Ancekewicz, and informed her that her contract would not be renewed, and that she was terminated, but would continue to receive her salary until August 31, 2002.

Ancekewicz's complaint alleges that "LIU terminated Ancekewicz's employment because she exercised her right to recover retirement benefits contained in an employee benefit plan." Ancekewicz states that her "job performance was more than satisfactory," and that she "received positive written and verbal feedback from her superiors, co-workers, outside colleagues and prospective students." The Defendants, however, insist otherwise.

3

According to LIU's uncontroverted Rule 56.1 Statement,[1] within six weeks of the commencement of Ancekewicz's employment, Najarian began to receive complaints about her behavior. A November 12, 2001 memorandum of complaint from Joan Viesta, Assistant Dean of the School of Continuing Studies, noted Ancekewicz's "reluctance to assist in the functioning of the office while the department was short staffed." Another memorandum from Viesta dated two days later describes a complaint received from an LIU telephone operator that Ancekewicz treated him rudely while he attempted to assist her with locating a telephone number. Another, similar, complaint was filed by the operator following a similar incident in early December 2001.

LIU's Rule 56.1 Statement states that at about that time, Najarian "approached plaintiff about the problems concerning her interaction with other employees," but continued to receive complaints about Ancekewicz's performance. On February 26, 2002 Najarian wrote Ancekewicz a memorandum noting the complaints of various LIU employees and faculty members who "feel 'insulted' by the way you talk to them," stating that "[o]ne of the critical requirements of this position is to have good communication and interpersonal skills," and

---

[1] Local Rule of Civil Procedure 56.1 of the U.S. District Court for the Eastern District of New York ("Rule 56.1") requires parties moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to admissible evidence in the record supporting each such fact. *See* Local Rule 56.1(a), (d). "If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citing Local Rule 56.1(c)). However, "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001).

warning that "your employment will be terminated if there is another incident in which you fail to deal with your colleagues or other constituents in an appropriate and satisfactory manner." (This is apparently the "warning letter" to which Ancekewicz's complaint refers.) Ancekewicz responded the following day with her own memorandum, which states in relevant part that "[m]y personality is neither rebarbarative nor authoritarian, as is that of a number of my colleagues, who seem to be doing just fine," and that "I certainly am more polite and respectful to the individuals with whom I interact and many have said so."

"[F]or a period of time" thereafter, according to LIU, the complaints regarding Ancekewicz's interpersonal relations "subsided." However, complaints regarding Ancekewicz resumed in June 2002. On June 13, Sue Oatey, Associate Provost for Student Affairs, wrote to Najarian to inform him that Ancekewicz "was quite firmly negative in her response to my request for an emergency contact number," had disregarded certain New York State vaccination requirements for international students, and had "reportedly counseled a prospective student to attend classes prior to receiving an appropriate visa, this being in direct conflict with what the staff of International Student Services had told the individual." On the same day, Oatey had apparently received a letter from Yocasta Brens, a member of International Student Services, noting that Ancekewicz "suggested that we simply tell the Immigration and Naturalization Service that [the] student . . . is not registered for courses . . . but simply auditing," and had disregarded, or encouraged others to disregard, other federal regulations regarding the issuance of student visas. Brens's letter also noted that Ancekewicz "has on several occasions made comments in regards to all international students wanting to immigrate to the U.S.," and that

5

"I have been contacted by administrators at other institutions who feel that her behavior has been inappropriate and not the image we should be projecting." Also on June 13, 2002, the employee of an outside food vendor wrote to complain that Ancekewicz had been "very abrasive" regarding a problem with a scheduled delivery.

Despite being informed of her termination on June 17, 2002, LIU states that "plaintiff continued to report to work," and "[c]onsequently, on June 24, 2002, plaintiff was relieved of her duties and asked to leave the premises."

Ancekewicz filed the present lawsuit on August 12, 2002. The Defendants filed the present summary judgment motion on August 26, 2004. Since her original and substitute attorneys have withdrawn from representation, Ancekewicz has been afforded pro se status, and was timely served with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" pursuant to Local Rule of Civil Procedure 56.2. The first page of the notice states in relevant part: "THE CLAIMS ASSERTED IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION by filing your own sworn affidavits or other papers as required by Rule 56 of the Federal Rules of Civil Procedure." The notice then included the text of Rule 56, and further explained that "Rule 56 provides that you may not oppose summary judgment simply by relying on the allegations in your amended complaint. Rather, you must submit evidence, such as witness statements or exhibits, countering the facts asserted by the defendant and raising a genuine issue of material fact for trial." The notice further warns that "[i]f you do not respond to the motion for summary judgment with affidavits or documentary evidence contradicting the facts asserted by the defendant, the Court will be

required to accept defendant's factual allegations as true."

Ancekewicz has not submitted any memoranda, statement of facts, or affidavits or other evidence in response to LIU's motion. Instead, she has sent several letters to the Court arguing that LIU's motion consists of "blatant bald intentionally fallacious claims," and that "the crooks at Cullen & Dykman and Ms. Murphy," have a conflict of interest in their representation of LIU and have "continued syphoning . . . funds from my employer," have "tried to substitute doctored documents for the actual ones," and have "presented unsubstantiated blatant lies as facts." Ancekewicz's letters further object to this Court's continued refusal to meet with her *ex parte*, a meeting that she claims "would render moot the question of summary judgment," and to this Court's refusal to appoint an attorney to represent her. Ancekewicz has also re-sent copies of a three-page letter dated October 10, 2003 from Brian K. Saltz, her former attorney (hereinafter, the "Saltz letter"), written to oppose LIU's request for a pre-motion conference. (*See* Denis R. Hurley Individual Practice Rules 2.A and 2.B.)

## *DISCUSSION*

I.  *Summary Judgment: Legal Standards*

Summary judgment is generally appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). The party seeking summary judgment "bears the initial

7

responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has offered some evidence that no genuine issue of material fact remains to be tried, the burden shifts to the non-moving party to provide similar evidence indicating that a genuine, triable issue remains. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-55 (1986).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). But it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); Fed. R. Civ. P. 56(e). More particularly, although "summary judgment

8

should be used sparingly" in cases where the material fact at issue is the defendant's intent or motivation, the plaintiff must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1998). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

Federal Rule of Civil Procedure 56(e) provides that if a non-moving party fails to oppose a summary judgment motion, judgment shall be entered against that party "if appropriate." The Second Circuit has warned, however, that "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment"; rather, when faced with an unopposed motion for summary judgment, a district court "must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

Pro se plaintiffs deserve "special latitude on summary judgment motions," *McDonald v. Doe*, 650 F. Supp. 858, 861 (S.D.N.Y. 1986), and the submissions of pro se litigants must be "generously and liberally construed." *Kadosh v. TRW, Inc.*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994). Nevertheless, a pro se plaintiff's " 'bald assertion,' made without any evidentiary support, 'is not sufficient to overcome a motion for summary judgment.' " *Burke v. Royal Ins. Co.*, 39 F. Supp.2d 251, 257 (E.D.N.Y. 1999)

9

(quoting *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995)).

II. *As Plaintiff Has Failed To Show the Presence of Any Material Issue of Fact Tending To Rebut the Defendant's Proffered Lawful Reason for Her Termination, Summary Judgment Is Granted.*

  A. *ERISA's Section 510: legal standards*

Ancekewicz alleges as her sole cause of action that her employment at LIU was terminated in violation of Section 510 of the Employee Retirement Income Security Act of 1974 (ERISA), codified at 29 U.S.C. § 1140. Section 510 states in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . The provisions of section 1132 of this title [governing civil actions to enforce ERISA's provisions] shall be applicable in the enforcement of this section.

The Second Circuit has held that the plain language of this provision indicates that in order to state a claim under Section 510, the plaintiff must establish as an "essential element" that the employer's action was at least partially motivated by the specific intent to engage in the prohibited retaliatory conduct. *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988). There is no cause of action where the loss of benefits "was a mere consequence of, but not a motivating factor behind, a termination of employment." *Id.* Thus, in order to defeat summary judgment, Ancekewicz must adduce some evidence from which a reasonable jury could conclude that LIU terminated her employment with the intent to prevent her obtainment of retirement benefits. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898,

10

906 (2d Cir. 1997).

"Because the existence of a specific intent to interfere with an employee's benefit rights is critical in § 510 cases — yet is seldom the subject of direct proof," courts analyze ERISA retaliation claims using the familiar "burden-shifting" methodology first developed for employment discrimination claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Dister*, 859 F.2d at 1111-12.

Under *McDonnell Douglas* and its progeny, the plaintiff has the initial burden of demonstrating a prima facie case of discrimination; if the plaintiff succeeds in doing so, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the allegedly discriminatory action; should the defendant carry this burden, the plaintiff must then produce sufficient evidence to indicate that the legitimate reasons offered by the defendant were but a pretext for discrimination. *Id.* at 1111 (internal quotations omitted). At summary judgment, the plaintiff's burden of proving that the employer's reason is pretextual then merges with her "ultimate burden" of persuading the trier of fact that she was the victim of intentional discrimination. *Id.* at 1112; *see also Richane v. Fairport Central Sch. Dist.*, 179 F. Supp.2d 81, 86 (W.D.N.Y. 2001). The plaintiff may show pretext directly, by persuading the court that there are material issues of fact that, if ultimately resolved in her favor, would demonstrate that a discriminatory reason more likely than not motivated the employer. Alternatively, the plaintiff may show pretext indirectly, by showing that the employer's proffered explanation for her termination is unworthy of credence. *Dister*, 859 F.2d at 113.

B. *Under the McDonnell Douglas analysis, Plaintiff's claim fails because she*

> *has not identified any evidence tending to show that the Defendant's proffered explanation for her termination was pretextual.*

LIU devotes considerable space in its brief to its arguments that under the relevant governing provisions of ERISA, Ancekewicz lacks standing to bring the present claim and fails to make out a prima facie case of unlawful termination under Section 510, because she was never eligible to receive benefits under LIU's retirement plan, and was thus neither a plan participant nor a plan beneficiary. *See* 29 U.S.C. § 1132(a). Rather than delve into these issues, however, the Court will simply assume *arguendo* that Ancekewicz *has* standing as a plan participant and *has* met her burden of demonstrating a prima facie case that she was terminated in retaliation for inquiring about her benefits. Ancekewicz's claims still must fail, however, because LIU has responded to her prima facie showing by offering a legitimate reason for its decision to terminate her, and Ancekewicz has failed to offer any indication that LIU's proffered reason is pretextual.

An ERISA defendant's burden of offering a legitimate non-discriminatory reason for its actions is "relatively light"; "[t]he employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998).

Numerous federal discrimination cases analyzed under the *McDonnell Douglas* framework have held that legitimate, non-discriminatory reasons for discharging a plaintiff-employee can include that individual's poor interpersonal skills, uncooperative behavior,

12

inability to get along with others, or bad attitude in general. *See*, *e.g.*, *Thomson v. Saatchi & Saatchi Holdings (USA), Inc.*, 958 F. Supp. 808, 822 (W.D.N.Y. 1997) (defendants' legitimate, non-discriminatory reasons for plaintiff's discharge included plaintiff's failure to "get along with his colleagues and subordinates," and "complaints about plaintiff's personality from one of defendants' largest clients"); *Ebbin v. Indep. Television Network*, No. 95 Civ. 10097, 1997 WL 441943, at *4 (S.D.N.Y. Aug. 5, 1997) (personality or attitude are legitimate non-discriminatory reasons for dismissal); *and Reed v. Conn., Dep't of Transp.*, 161 F. Supp.2d 73, 84 (D. Conn. 2001) (employee's record of "disruptive" and "insubordinate and uncooperative" behavior, prior written reprimands, and " 'needs improvement' rating for his interpersonal skills" were legitimate, non-discriminatory rationale for employer's failure to promote him); *see also Simpson v. Ernst & Young*, 879 F. Supp. 802, 817 (S.D. Ohio 1994) (legitimate, non-discriminatory reasons for ERISA plaintiff's discharge included his "poor attitude"). The federal discrimination statutes bar retaliation against the exercise of protected rights; "they do 'not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and *uncivil conduct*.' " *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828-29 (1st Cir. 1991) (quoting *Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1391 (8th Cir. 1988)) (emphasis added).

It also does not matter whether the plaintiff's attitude was caused by the behavior of her coworkers. *See Allen v. City of Yonkers*, 803 F. Supp. 679, 708 (S.D.N.Y. 1992) ("Conflicts with those in authority may constitute valid reasons for discharge, whether or not the conflict entails fault on the part of the employee."). Further, the mere *perception* that an

employee has a bad attitude is sufficient grounds for his termination. *See Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1044 (6th Cir. 1992) (where plaintiff "was perceived as being out for himself rather than being a company man," defendant had legitimate reason for terminating him).

Evidence that a plaintiff's co-workers informed her supervisor that she was deficient are not hearsay and would be admissible at trial, so long as they are *not* introduced to prove the truth of the underlying facts asserted, but merely to show that the supervisor had reasonable grounds for believing that the plaintiff was sub-par and worthy of termination; thus, such evidence may be considered, and weighed in favor of the defendant, on summary judgment. *See DeLeonardis v. Credit Agricole Indosuez*, No. 00 Civ. 138, 2000 WL 1718543, at *12 (S.D.N.Y. Nov. 15, 2000) (finding "no hearsay issue" where employer seeks to introduce prior statements made to managers about plaintiff's earlier misconduct, "because what matters is not what actually occurred," but "what senior management reasonably believed and relied on in making their decision to terminate the plaintiff"). In the present case, the exhibits submitted by LIU indicate that Najarian and LIU had a reasonable basis to believe that Ancekewicz was a disagreeable person who was chronically incapable of getting along with others, and thus had a legitimate and non-discriminatory reason for firing her.

Nothing in the Saltz Letter, or any of Ancekewicz's other submissions in response to the present motion, remotely suggests any refutation of LIU's proffered reason for her termination. However, in an abundance of caution and in light of Ancekewicz's pro se status, *see Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000), this Court will construe various

portions of the unverified complaint as pre-emptive attempts to show pretext behind LIU's rationales. *See also Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994) ("Pretext may be demonstrated *either* by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, *or* by reliance on the evidence comprising the prima facie case, without more.") (emphases added) (citation omitted); *and Lizardo v. Denny's, Inc.*, 270 F.3d 94, 103 (2d Cir. 2001) (at summary judgment stage of discrimination case, "the court must examine the entire record to determine if plaintiffs meet their ultimate burden of persuading the fact-finder . . ."). Specifically, the Court will treat Ancekewicz's statements (at Complaint, ¶ 11) that her "job performance was more than satisfactory," and that she "received positive written and verbal feedback from her superiors, co-workers, outside colleagues and prospective students" as attempting to demonstrate pretext, by suggesting that LIU's proffered grounds for her termination are false. But even these assertions, broadly construed, fail to suggest pretext behind Ancekewicz's termination, and thus fail to defeat summary judgment.

Where an employer's proffered reason for terminating an employee is the employee's poor attitude or interpersonal skills, it is immaterial whether the defendant's perception of the plaintiff's attitude is actually correct; even if an employer is mistaken as to a plaintiff's bad performance or attitude, his decision to terminate her is still legitimate and non-discriminatory, so long as the mistake was in good faith. *See Gandelman v. Aetna Ambulance Serv., Inc.*, 48 F. Supp.2d 169, 175 (D. Conn. 1999) ("Defendants may have made a mistake in thinking that plaintiff had stolen company goods, but that, without more, does not

15

lead to the conclusion that they were discharging him in order to be able to obtain less expensive group health coverage.") (citing *Dister*, 859 F.2d at 1116).

Similarly, an employee's "opinion about [her] own qualifications does not suffice to give rise to an issue of fact about whether [she] was discriminated against," *Hines v. Hillside Children's Ctr.*, 73 F. Supp.2d 308, 320 (W.D.N.Y. 1999), and "[t]he fact that an employee disagrees with an employer's evaluation of [her] does not prove pretext." *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) (*overruled in part on other grounds, St. Mary's Honor Ctr.*, 509 U.S. 502 (1993)). Moreover, it is of no import that the employee had other *good* qualities or made other *positive* contributions to the workplace, or whether the decision to terminate the plaintiff was ill-advised overall; "Section 510 protects employees from conduct designed to deprive them of rights created under employee benefit plans; it does not cast liability on an employer for misjudgments respecting an employee's contribution to the company." *Dister*, 859 F.2d at 1116. Thus, "[e]vidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons." *Id.* "ERISA's goal of protecting [pension and other] benefits from interference does not transform ERISA's statutory scheme into a federal job protection scheme." *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1539 (10th Cir. 1993).

In the present case, LIU has offered ample evidence that it received repeated complaints regarding Ancekewicz's behavior and attitude; those complaints provide a sufficient, legitimate, non-discriminatory and non-retaliatory reason for her termination.

Ancekewicz has offered no reason why LIU should reasonably have doubted the veracity of those complaints. Ancekewicz may disagree with the assessments made in the complaints, and may have had other positive qualifications for her job. But that is not sufficient to demonstrate "that a discriminatory reason more likely motivated [LIU]" or "that [LIU]'s proffered explanation is unworthy of credence." *See Dister*, 859 F.2d at 1112-13, 1116-17. Ancekewicz thus fails to demonstrate that the grounds given for her termination are pretexts for discrimination or retaliation in violation of ERISA, and therefore fails to demonstrate the existence of a material factual issue that could preclude summary judgment. Accordingly, summary judgment for the Defendant is warranted — and granted.

## *CONCLUSION*

For all of the above reasons, the Defendant's motion for summary judgment is GRANTED, and Plaintiff's claim is hereby DISMISSED. The Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

Dated: Central Islip, New York
June 15, 2005

/s/
Denis R. Hurley
United States District Judge